IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SHERRY P. KOPP, | Case No.: 3:26-cv-0574-AR |
| Plaintiff, | |
| v. | OPINION AND ORDER |
| CAPITAL ONE AUTO FINANCE and McMINNVILLE CDJRM LLC d/b/a McMINNVILLE CHRYSLER DODGE JEEP RAM MAZDA, | |
| Defendants. | |

**Adrienne Nelson, District Judge:**

Self-represented plaintiff Sherry Kopp brings this action alleging breach of contract and violations of the Truth in Lending Act, the Oregon Unlawful Trade Practices Act, and the Fair Credit Reporting Act ("FCRA") by defendant Capital One Auto Finance ("Capital One"). In an amended complaint, plaintiff added claims for fraud, misrepresentation, and unfair trade practices against McMinnville Chrysler Dodge Jeep Ram Mazda. Plaintiff now moves for an ex parte temporary restraining order ("TRO") or preliminary injunction. The Court finds that oral argument will not help resolve this matter. *See* Local R. 7-1(d). For the reasons stated below, plaintiff's motion is DENIED.

## LEGAL STANDARD

A TRO or preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Generally, motions for a TRO and motions for preliminary injunction are subject to substantially the same factors. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The party seeking such an injunction must show: (1) the petitioner is likely to succeed on the merits; (2) the petitioner is likely to suffer irreparable harm in the absence of preliminary relief;

(3) the balance of equities tips in favor of the petitioner; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20.

The burden on the moving party is heightened when a TRO is sought without an opportunity for the adverse party to be heard ("ex parte").  Issuance of ex parte TROs is "extremely limited" because "'our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute.'"  *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 438-39 (1974)).  The party seeking an ex parte TRO must "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "certif[y] in writing any efforts made to give notice and the reasons why it should not be required."  Fed. R. Civ. P. 65(b).  Ultimately, ex parte TROs "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."  *Granny Goose Foods, Inc.*, 415 U.S. at 439.

"Finally, the already high standard for granting a TRO or preliminary injunction is further heightened when the type of injunction sought is a 'mandatory injunction.'"  *Innovation L. Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156 (D. Or. 2018) (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015)).  A "mandatory injunction [is one that] 'orders a responsible party to take action'" rather than *refrain* from taking action.  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (quoting *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996)).  "In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'"  *Id.* (quoting *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1980)).  A party seeking a mandatory injunction is faced with a "doubly demanding" burden and "must establish that the law and facts clearly favor her position, not simply that she is likely to succeed."  *Garcia*, 786 F.3d at 740.

## BACKGROUND

**A.    Factual Background**

In January 2025, plaintiff received an auto loan from Capital One to purchase a 2023 Jeep Grand Cherokee L ("the Jeep").  Decl. of Sherry Kopp ("Kopp Decl."), ECF 7, ¶ 4; *see also* Pl. Supp. Exs. ("Pl. Supp."), ECF 14-1, Ex. BB at 160.[1]  Plaintiff's exhibits show that her auto loan account with Capital One was past due between April and October 2025.  *See id.* Ex. UU (April 2025 statement indicating account past due); *id.* Ex. VV (May 2025 statement); *id.* Ex. TT (June 2025 statement); *id.* Ex. WW (July 2025 statement); *id.* Ex. T (August 2025 statement); *id.* Ex. U (September 2025 statement); *id.* Ex. V (October 2025 statement).  In November 2025, Capital One granted an extension, which moved one payment to the end of plaintiff's account term.  *See id.* Ex. P.  Combined with payment made to plaintiff's account on November 8, 2025, this extension brought plaintiff's account current.  *See id.* Ex. XX.  However, the transaction history filed by plaintiff shows that the November 8, 2025 payment was the last one made by plaintiff on the auto loan.  *See id.* Ex. GG.

In a letter dated January 26, 2026, Capital One notified plaintiff that she was in default and that if she did not bring the account current by February 10, Capital One would "exercise [its] rights in accordance with state laws" including "the right to accelerate the debt and to repossess" the Jeep.  *Id.* Ex. Q.  Capital One sent another notice dated March 1, 2026, indicating that plaintiff's account was "81 days past due" and notifying plaintiff that Capital One "inten[ded] to strictly enforce the contract" and that the Jeep "may be referred for repossession" unless plaintiff made a monthly payment by March 8.  *Id.* Ex. R.  As of March 20, 2026, Capital One's account statements show plaintiff's account nearly $4,000 past due.  *See id.* Ex. BBB.  Capital One sent plaintiff a notice dated March 31, 2026, indicating that it had repossessed the Jeep and intended to sell it at auction "sometime after April 15, 2026."  *Id.* Ex. F.

---

[1] Plaintiff alleges that there are material discrepancies between different versions of the contract.  Without deciding the merits of those claims, for the purposes of this motion, the Court relies on the version of the sale contract that plaintiff contends is the valid one.  *See* Pl. Supp. Decl. ("2d Kopp Decl."), ECF 14, ¶ 4f (indicating that Ex. DD is the one plaintiff received and signed); Pl. Supp., Ex. DD (referring to a sub-part of Ex. BB); *id.* Ex. BB at 160 (including plaintiff's handwritten note "[t]his is the real one").

B.    **Procedural Background**

Plaintiff filed a the operative first amended complaint on March 31, 2026, asserting six claims based on various irregularities in the processing, documentation, and servicing of the loan. Am. Compl., ECF 8, ¶¶ 7-9, 13-23, 35-68. Also on March 31, plaintiff moved the Court to issue a TRO requiring Capital One to refrain from auctioning or otherwise selling the Jeep, to return the Jeep to plaintiff within 72 hours, to cease credit reporting and collection activity, and to preserve evidence. TRO Mot., ECF 6, at 5. Plaintiff contends that without this requested relief she will suffer irreparable harm in four ways:

> 1. Loss of unique property. The vehicle at issue - VIN 1C4RJKDG2P8882422 - is a specific, identified piece of personal property repossessed under a materially disputed contract. Once sold at auction, Plaintiff cannot obtain the same vehicle. There is no adequate remedy at law because monetary damages cannot restore possession of this specific vehicle once it is sold to a third party.
>
> 2. Imminent auction risk. Repossessed vehicles are typically sold at auction within days to weeks. Every day without a court order increases the risk that the vehicle will be permanently transferred to a third-party buyer, eliminating this Court's ability to order return.
>
> 3. Loss of transportation. Plaintiff relies on this vehicle for transportation to employment, medical appointments, and care of her family. Loss of transportation causes ongoing daily harm that compounds irreparably.
>
> 4. Continuing credit damage. Capital One continues to report inaccurate information — including a fabricated account open date — to credit bureaus. Each reporting cycle causes additional harm to Plaintiff's credit score and financial standing that is difficult to quantify and impossible to fully reverse.

*Id.* at 4; *see also* Kopp Decl. ¶ 23 (attesting to the need for the vehicle for "transportation to employment, medical appointments, and daily care responsibility for [plaintiff's] six children and two additional minors"); ¶ 24 (attesting, on information and belief, that Capital One "may sell or auction the vehicle at any time").

On April 7, 2026, plaintiff filed a motion for leave to submit 487 pages of supplemental argument, declarations, and exhibits in support of plaintiff's TRO motion. *See* 2d Kopp Decl.; Pl. Supp. And on April 8, plaintiff filed a third declaration and an additional exhibit in support of her TRO motion. *See* Pl. Second

Emergency Supplemental Decl. ("3d Kopp Decl."), ECF 17.[2]  In the supplements, plaintiff provides further allegations, and supporting exhibits, related to the alleged irregularities in loan origination and servicing.[3] Plaintiff's supplement also asserts that plaintiff will suffer irreparable harm without emergency relief:

> If the vehicle is sold at private auction after April 15, 2026 as stated in Exhibit F, my ability to obtain complete relief will be permanently and irreparably compromised.  If the vehicle is sold or transferred, the status quo cannot be restored, and this Court's ability to grant meaningful relief will be permanently impaired.  Money damages alone cannot restore my transportation, which I depend on for employment, medical appointments for my disabled child, and daily family needs.

Pl. Suppl. Decl. ¶ 26.

## DISCUSSION

Plaintiff has not established that the law and facts clearly favor her position, nor that she will likely suffer irreparable harm in the absence of emergency relief.  Plaintiff's motion is therefore denied.

**A.      Likelihood of Success on the Merits**

Plaintiff identifies no legal authority for a claim of "wrongful repossession."  *See* Am. Compl. ¶¶ 46-51.  However, the Court interprets the claim as one for conversion (i.e., civil theft).  *See generally Lee v. Wood Prods. Credit Union*, 275 Or. 445, 447, 551 P.2d 446 (1976) (discussing repossession in the context of conversion); *Green v. World Famous, Inc.*, No. 05-6227-HO, 2007 WL 690084, at *2 (D. Or. Mar. 1, 2007) (same).  "In Oregon, conversion is an 'intentional exercise of dominion or control over [property] which so seriously interferes with the right of [the plaintiff] to control it that the [defendant] may justly be required to pay the other the full value of the [property]."  *Talk Radio Network Enters. v. Cumulus Media Inc.*, 271 F. Supp. 3d 1195, 1210 (D. Or. 2017) (quoting *Mustola v. Toddy*, 253 Or. 658, 663, 456

---

[2] Plaintiff's motion, ECF 14, is GRANTED.  The Court considered each of plaintiff's supplemental filings, along with the original moving papers.

[3] Plaintiff's supplemental filings also indicate that plaintiff recorded certain conversations with defendants' employees.  *See* 2d Kopp Decl. 5, 12; Pl. Supp. Ex. B at 5; *id.* Ex. C at 12; *id.* Exs. E & QQ.  The transcripts do not indicate whether the parties being recorded were informed of or consented to such recordings. Plaintiff is reminded that Oregon law requires that "notice be given before oral conversations may be recorded."  *Project Veritas v. Schmidt*, 125 F.4th 929, 938 (9th Cir.) (citing ORS § 165.540(1)(c)) (en banc), *cert. denied*, 146 S. Ct. 90 (2025).  Any audio recordings, or transcripts thereof, submitted as evidence should include evidence that notice was given to all recorded parties.

P.2d 1004 (1969)).  Therefore, to prevail on the merits of her wrongful repossession claim, plaintiff must prove, among other things, that she is entitled to control of the Jeep.  *See W. Radio Servs. Co. v. Verizon Wireless (VAW), LLC*, 297 Or. App. 446, 451, 442 P.3d 218 (2019) ("To establish a claim for trespass to chattels or conversion, a party must show an actual ownership interest in and the right to control the disputed property." (citing *Mustola*, 253 Or. at 663)).

Whether plaintiff is entitled to control of the Jeep depends on the terms of the sale contract. Pursuant to the agreement that plaintiff contends is valid, plaintiff purchased the vehicle for $45,825.33 and financed the entire amount.  *See* Pl. Supp., Ex. BB at 160.  That contract is missing the page with the monthly payment owed.  *See id.* at 162.  However, plaintiff represents that the agreed upon finance plan was 75 payments of $999.03, beginning February 10, 2025.  *See* Pl. Suppl. Decl. ¶ 4e.  Under Terms & Conditions, the agreement states that "[i]t will be a default . . . [i]f any payment on this contract isn't received when it is due" and that, following a default, defendants will have the right to "take the [Jeep] from [plaintiff] without notice" and "sell the [Jeep] and pay the amount received over and above lawful expenses, on the debt evidenced by this contract."  Pl. Supp. Exhibits, Ex. BB at 168-69.  Put simply, plaintiff committed to make monthly payments of $999.03 and agreed that if she failed to do so, defendants could repossess and sell the Jeep.

Plaintiff's own evidence demonstrates that between November 9, 2025, and when the Jeep was repossessed on March 30, 2026, plaintiff made none of the monthly payments required under the contract. *See id.* Ex. GG (showing the last payment made was on November 8, 2025, and late fees were assessed in December, January, February, and March for nonpayment).  Further, plaintiff was warned on January 26, 2026, and again on March 1, that continued nonpayment would result in repossession.  *See id.* Exs. Q & R. Plaintiff also received an account statement less than two weeks before the repossession indicating that she was nearly $4,000 behind on payments.  *See id.* Ex. BBB.  In summary, the evidence before the Court indicates that (1) plaintiff agreed that defendants had a right to repossess the Jeep if plaintiff was in default; (2) plaintiff was in default at the time of the repossession; and (3) plaintiff had received multiple warnings that Capital One would exercise its right to repossession under the contract if payment was not made.

Therefore, because plaintiff has not shown that she had a right to control the Jeep at the time of repossession, she has not established that "the law and facts clearly favor her position" to justify a mandatory injunction. *See Garcia*, 786 F.3d at 740. Indeed, on this record, the Court cannot conclude that plaintiff has satisfied even the lesser burden of being "likely to succeed" on the merits of her wrongful repossession claim.

To the extent that plaintiff bases the TRO motion on her breach of contract claim, it fails for substantially the same reasons. Although plaintiff disputes the validity of her contract with defendants,[4] the contract that plaintiff represents is authentic includes the repossession clause. *See* Pl. Supp., Ex. BB at 168-69. There is no evidence that defendants have breached these or any other provisions of the contract. Therefore, plaintiff has not shown that she is likely to succeed on the merits of the breach of contract claim.

As to plaintiff's TRO requests related to credit reporting, to the extent that such a request is predicated on plaintiff's FCRA request, it is unclear whether the FCRA permits injunctive relief at all. *Ramirez v. Trans Union, LLC*, 899 F. Supp. 2d 941, 947 (N.D. Cal. 2012) ("The only federal court of appeals to have addressed the issue held that while the Federal Trade Commission may obtain injunctive relief under the FCRA, a private litigant may not." (citing *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 268-69 (5th Cir. 2000))). *But see Munt-Lovell v. Roundpoint Mortg. Servicing Corp.*, No. 2:25-cv-01365-TL, 2026 WL 291026, at *2 (W.D. Wash. Feb. 4, 2026) ("[D]istrict courts in the Ninth Circuit have disagreed about whether to adopt the Fifth Circuit's holding in *Washington*." (collecting cases)). However, the Court need not reach this substantive issue at this stage, as plaintiff's request for a TRO regarding credit reporting activities is denied for failure to show irreparable harm, as discussed below.

---

[4] Plaintiff's filings frequently assert that plaintiff's contracts with defendants may not be valid, due to the cited irregularities and other misrepresentations. To the extent that plaintiff is seeking to void or rescind the contract, the result of that would be that plaintiff would return the Jeep. *Cf. Sheehan v. McKinstry*, 105 Or. 473, 481, 210 P. 167, 170 (1922) (holding that if a buyer of real property "'would rescind the contract of purchase on account of a defect in the title, or for any other breach of the agreement, he must restore the possession and the estate to the vendor'" (quoting *Sayre v. Mohney*, 30 Or. 238, 241, 47 P. 197 (1896))); *see also Smeltzer v. White*, 92 U.S. 390, 395-96 (1875) ("[W]hen a vendee seeks to rescind the contract of sale, he must return the property, or tender it. . ."). Because success on a rescission claim would not entitle plaintiff to keep the Jeep, such a claim cannot be the basis for a TRO ordering its return.

**B.      Irreparable Harm**

In addition to failing to establish a likelihood of success on the merits, plaintiff has also failed to establish irreparable harm.  "Irreparable harm is 'harm for which there is no adequate legal remedy, such as an award for damages.'  For this reason, economic harm is not generally considered irreparable." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021) (quoting *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014)); *see also Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015) ("Purely economic harms are generally not irreparable, as money lost may be recovered later, in the ordinary course of litigation.").

Loss of a vehicle and the transportation it provides are quintessentially economic losses that can be remedied with monetary damages if plaintiff prevails on the merits of her claims.  *See Hernandez v. Oregon Legislature*, 521 F. Supp. 3d 1025, 1039 (D. Or. 2021) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974))).  If plaintiff's vehicle is auctioned off and she ultimately prevails on the merits, plaintiff can be compensated with damages that allow her to purchase a 2023 Jeep Grand Cherokee L and special damages for financial harm sustained from loss of use of the Jeep may be available.  *See Harris v. Cantwell*, 47 Or. App. 211, 215, 614 P.2d 124 (1980).  Accordingly, courts routinely conclude that loss of a widely available vehicle is not an irreparable harm justifying extraordinary relief.  *See, e.g.*, *Williams v. Lobel Fin. Corp.*, 673 F. Supp. 3d 1101, 1108 (C.D. Cal. 2023) (finding no irreparable injury from the repossession of a car depriving plaintiff of transportation to work); *Jones v. Reg'l Acceptance Corp.*, No. 25-cv-02226, 2026 WL 267602, at *3 (M.D. Pa. Feb. 2, 2026) ("The simple loss of use of a car does not meet the burden of establishing irreparable harm.").  Although loss of a vintage or otherwise irreplaceable vehicle may constitute irreparable harm, plaintiff's conclusory assertion that the 2023 Jeep Grand Cherokee is "unique property," TRO Mot. 4, is insufficient, *see Presley v. Statewide*, No. 2:25-cv-06493-AB-JC, 2025 WL 2373255, at *3 (C.D. Cal. July 21, 2025) (holding that nonspecific allegations that a repossessed vehicle is "unique" are insufficient to establish irreparable harm).  Indeed, Plaintiff acknowledges in her complaint that damages in the form of

the fair market value of the Jeep would be a substitute for the return of the Jeep itself. *See* Am. Compl. 9 (seeking "[r]eturn of the repossessed vehicle *or compensation for its fair market value*" (emphasis added)). The Court appreciates that loss of transportation may be distressing and extremely disruptive to plaintiff's life; however, this is not the kind of irreparable harm that justifies a TRO.

Similarly, because negative credit reporting, even if untrue, also inflicts an economic injury that can be remedied with monetary damages, district courts across the Ninth Circuit have held that such an injury is not irreparable. *See Williams v. Transworld Sys. Inc.*, No. 25-cv-09527-HSG, 2025 WL 3295330, at *2 (N.D. Cal. Nov. 26, 2025) (collecting cases).

Plaintiff has not established that she is likely to succeed on the merits of her claims nor that an irreparable injury is likely in the absence of temporary relief. As such, the Court does not reach the other *Winter* factors. *See Williams*, 673 F. Supp. 3d at 1106 (C.D. Cal. 2023) ("Where a plaintiff has not made the minimum showing of irreparable injury, it is not necessary for the Court to decide whether the plaintiff is likely to succeed on the merits." (citing *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1378 (9th Cir. 1985))). Because all of the injuries plaintiff identifies and seeks to avoid are fundamentally economic and can be compensated with monetary damages if plaintiff prevails on the merits, plaintiff will not be able to establish an irreparable injury even with additional briefing or a hearing. Therefore, her motion must be denied as to both a TRO and a preliminary injunction.

## CONCLUSION

Plaintiff's motion to supplement, ECF 14, is GRANTED. For the reasons stated herein, plaintiff's motion for a temporary restraining order or preliminary injunction, ECF 6, is DENIED.

IT IS SO ORDERED.

DATED this 9th day of April, 2026.

Adrienne Nelson
United States District Judge